UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

    VINCENT D. RAMIREZ and                     Case No. 08-51448
    THERESA RAMIREZ,                          Chapter 13
                                                                Hon. Walter Shapero
        Debtors.
_____/

## OPINION ON TRUSTEE'S OBJECTION TO CONFIRMATION REGARDING DISPOSABLE INCOME AND CALCULATION OF COMMITMENT PERIOD

### I. Introduction

The matter before the Court is the U. S. Trustee's Objection to Confirmation of Debtors' proposed chapter 13 plan.

### II. Facts

Vincent and Theresa Ramirez filed their chapter 13 petition on May 9, 2008. As required, the Debtors filed their Current Monthly Income and Calculation of Commitment Period and Disposable Income (Means Test) on May 27, 2008. Lines 1, 10, and 11 of Debtors' Means Test indicate that Debtors' gross monthly income during the six months prior to the filing of this case was $12,264.63. Debtors' Means Test allowed for total adjustments in the amount of $11,018.60. Line 59 of the Means Test indicates that the Debtors have monthly disposable income in the amount of $1,246.03.

Debtors filed their Schedules on May 27, 2008. Schedule I set forth their gross and net monthly income at the time of filing. The gross monthly income shown is $7,101.54. Schedule J shows monthly expenditures totaling $4,256.21, and therefore, based on those Schedules,

Debtors have a monthly net income of $2,845.32. Debtor's proposed chapter 13 plan offers to pay $1,313.22 bi-weekly ($2,845.31 monthly) for 60 months. The proposed plan indicates that such payments are to be applied to administrative expenses, continuing monthly mortgage payments on first and second mortgages, property taxes, and finally to scheduled unsecured creditors. The latter are to receive a base total amount of $9,260.49, shared pro rata among that class.

The Trustee objects to the proposed plan arguing that it does not provide for payment of all of their "projected disposable income" to provide payment to unsecured creditors. Trustee argues Debtors should be required to pay unsecured creditors $1,246.03 (as indicated by Line 59 of the Means Test) monthly over the term of their five year plan, totaling $74,761.80. Debtors assert that the Means Test calculation of "projected disposable income," which was based on a substantially higher income during the six months prior to filing, does not properly represent the Debtors' current "projected disposable income." Debtors assert the inquiry should be based on their materially less monthly income as indicated on Schedules I and J.

Confirmation hinges on how the term "projected disposable income" should be interpreted and applied in this case.

### III. Analysis

#### A. Calculating Projected Disposable Income

Determination of the Debtors' "projected disposable income" begins with the following code provision:

> 1325(b)(1): If the trustee or the holder of an allowed unsecured claim objects to confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –

> (B) the plan provides that all of the debtors **projected disposable income** to be received in the **applicable commitment period** beginning on the date that the first payment is due under the plan will be applied to make payments to **unsecured creditors** under the plan.

Under 11 U.S.C. 1325(b)(2), for above-median income debtors, the Bankruptcy Code defines the term "disposable income" as "current monthly income" minus certain expenses set forth in 11 U.S.C. 707 (b)(2)(A) and (B). The Bankruptcy Code's definition of the term "current monthly income" is based on the average monthly income received during the last full six months preceding the commencement of the case. 11 U.S.C. 101(10A). The face and words of the statute itself present an interpretive enigma. By is use of the term "projected" it appears to be looking forward. However, by also referring to and utilizing the phrase "current monthly income," a phrase which is itself defined elsewhere in the code, by reason of that definition it appears to be looking backward.

There has been a great deal of inconsistency in the courts with regard to the issue of "projected disposable income." Before BAPCPA was enacted, "disposable income" was defined as "income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance and support of the debtor or a dependent of the debtor . . . ." 11 U.S.C. § 1325 (b)(2)(A) (1994). Generally, a debtor's disposable income was determined by subtracting the expenses listed on Schedule J from the income listed on Schedule I. For purposes of determining whether a debtor was using all of his "projected disposable income" to fund a plan, the difference between Schedule I and J was multiplied by the proposed length of the debtor's plan. *See, e.g.*, *In re Norris*, 165 B.R. 515 (Bankr. M.D.Fla. 1994).

BAPCPA changed the Code's definition of "disposable income" through amendments to §1325(b)(2). Pursuant to those amendments, "disposable income" for above-median income debtors is "current monthly income" less specific expenses enumerated in §707(b)(2)(A) and (B). 11 U.S.C. § 1325(b)(2)(A), (b)(3) (2005). Thus, the enactment of BAPCPA brought forth changes in the definition of "disposable income," which has given rise to a great deal of debate as to whether the meaning of "projected disposable income" has also changed. *See Coop v. Frederickson (In re Frederickson)*, 375 B.R. 829, 833 (B.A.P 8th Cir. 2007).

There are currently two interpretations of "projected disposable income." The majority of courts interpret "projected disposable income" by taking into account the debtor's <u>anticipated</u> income at the time of confirmation - i.e. the looking forward view. Alternatively, the minority view relies exclusively on the Means Test to determine "projected disposable income" - i.e. the looking backward view.

The Bankruptcy Appellate Panel of the Sixth Circuit (BAP) has recently decided this issue and followed the majority view. Absent a very strong contrary view, this Court believes the BAP opinion should be followed. Furthermore, this Court believes that in the context of maximizing what a debtor can and should pay to creditors in the future, the view taken by the BAP is the one that makes the most sense. Those BAP cases are *In re Petro* and *In re Thomas*. *In re Petro*, 2008 WL 4601471 (B.A.P. 6th Cir.), *In re Thomas*, 2008 WL 4755371 (B.A.P. 6th Cir.). In *In re Petro* and *In re Thomas*, the debtor's disposable income calculated on Schedules I and J was significantly higher than the debtor's disposable income calculated on Form B22C (Means Test). In both of these cases, the trustees objected to confirmation of the plans because they failed to provide that all of the Debtors' projected disposable income would be applied to make payments to unsecured creditors under the plan. The trustees argued that, as indicated by

their disposable incomes calculated on Schedules I and J, the debtors could afford to pay more into their plans.

In the *In re Petro* case, the BAP throughly analyzed the meaning of the phrase "projected disposable income," starting with interpretation of the statute itself. Looking to the language of the statute, it focused on the word "projected." The BAP noted that the word "has more than one definition, and two of those definitions point in opposite directions. One can merely "project" mechanically, assuming stasis, or one can "project" based upon what might happen during the projection period. *See In re Petro*, 2008 WL 4601471 at 5 (B.A.P. 6th Cir.). Reading the phrase "projected disposable income" in conjunction with the statute as a whole, the BAP looked to the general purpose behind the bankruptcy laws, and found the mechanical approach ignored the policy behind the amendments to the bankruptcy code and the remedial nature of the code generally. It concluded that to interpret § 1325(b) using the mechanical approach "is counterintuitive to one of the main objectives of BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible." *Id.*, quoting *Ransom v. MBNA Am. Bank, N.A. (In re Ransom)*, 380 B.R. 799, 808 (B.A.P. 9th Cir. 2007).

In both cases, the BAP held that "where the debtor's income at confirmation or as reasonably anticipated for the plan commitment period is materially different from the debtor's 'disposable income' as defined by §1325(b)(2), the court must depart from the Form B22C calculation." *In re Petro*, 2008 WL 4601471 (B.A.P. 6th Cir.), quoting *In re Kibbe*, 361 B.R. 302, 314-5 (B.A.P. 1st Cir. 2007). The BAP held that the Court must consider both the historical and future finances of the debtor in determining the debtor's "projected disposable income." The BAP also found that the Form B22C calculation of "disposable income" is not determinative of the debtor's "projected disposable income" because it does not take into account the debtor's

circumstances as of the petition date or foreseeable changes in circumstances during the plan commitment period. *Id.*

Ultimately, the BAP ruled that the courts should use the "disposable income" calculation on Form B22C as a starting point. If there has been some significant change in the debtor's income at confirmation, as reflected by debtor's Schedules I and J, then the "debtor's projected disposable income should be calculated based on the realities of the debtor's circumstances as of confirmation and as reasonably anticipated to be during the length of the plan." *In re Petro*, 2008 WL 4601471 (B.A.P. 6th Cir.). Following this direction requires the Court to take into account the Debtor's actual ability to contribute to the plan. It will first look to the "disposable income" calculation on Form B22C. It will then determine if there has been any significant change in the debtor's income at confirmation, as reflected on debtor's Schedules I and J. If this court determines that there has been a significant change in the debtor's income at confirmation, it will then calculate the debtor's "projected disposable income" taking into consideration the debtor's current and anticipated future circumstances.

B. Applicable Commitment Period

The term "applicable commitment period" is determined under 11 U.S.C. 1325(b)(4). 11 U.S.C. 1325(b)(4) requires a plan with a duration of 60 months for above-median income debtors. The Trustee argues that the "applicable commitment period" is used as a multiplier. The Trustee argues that the five year "applicable commitment period" should be used as a multiplier, along with the "disposable income" as calculated on Form B22C, to determine the total amount to be paid to unsecured creditors over the course of the plan. Debtor argues that the "applicable commitment period" is simply a temporal requirement, which determines the amount

of time over which the debtor must commit all "disposable income" to payment of unsecured creditors under the plan.

There has also been a great deal of controversy surrounding the term "applicable commitment period." There is a split of opinion as to whether the "applicable commitment period" is a temporal requirement for the Chapter 13 plan or whether it is simply a multiplicand to be used to determine that exact amount of money a Debtor should be required to pay to unsecured creditors. *See In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006); *In re Dew*, 344 B.R. 655 (Bankr. N.D. Ala. 2006); *In re Gress*, 344 B.R. 919 (Bankr. W.D. Mo. 2006); *In re McGuire*, 342 B.R. 608 (Bankr. W.D. Mo. 2006); *In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006) (applicable commitment period is temporal and controls the length of a debtor's plan); *See also, In re Fuger*, 347 B.R. 94 (Bankr. D. Utah 2006) (applicable commitment period is a multiplicand in a mathematic formula to determine the amount to be paid to unsecured creditors rather than a temporal requirement). However, a Judge of this court has ruled on this exact issue in the case of *In re Davis*. *In re Davis,* 348 B.R. 449 (Bkrtcy. E.D. Mich. 2006).

In that case, the Court ruled that the phrase "applicable commitment period," as used in 11 U.S.C. 1325(b), is a temporal concept, that defines minimum length of plan. *Id*. The court reasoned that the statutory interpretation of and congressional intent behind the BAPCPA required this ruling. After reading through the statute, it can be simply put that "the applicable commitment period under § 1325(b)(4) for a below median income debtor is three years, and for an above median income debtor is five yeas, but may be shorter for either if the plan provides payment in full of unsecured claims over a shorter period." *Id*.

That Court ultimately ruled that a "debtor's applicable commitment period, as determined by §1325(b)(4), does impose a minimum length of plan, rather than a calculation of a minimum

amount, by application of §1325(b)(1)(B) to debtors whose Chapter 13 plans do not pay unsecured creditors in full and whose plans are the subject of an objection by a trustee or unsecured creditor." *Id*.

On a Motion for Consideration of the court's decision in *In re Davis*, the United States District Court denied the motion and noted that an overwhelming majority (11 out of 12 bankruptcy courts) have ruled that "applicable commitment period" is a temporal requirement.

Since this Court agrees with the *In re Davis* reasoning and result, this Court concludes that the "applicable commitment period" is a temporal requirement for the length of the Debtors' Chapter 13 plan and not simply a multiplier for the amount owed to unsecured creditors.

## Conclusion

This Court thus (1) concludes Trustee's objection that the calculation of "projected disposable income" to be the product of the application of a strictly mathematical formula (Line 59 times 60 months) and that the Debtors' actual net income is irrelevant for purposes of plan confirmation should be overruled and (2) dismisses the Debtor's assertion that their "projected disposable income" should be calculated using solely Schedules I and J.

This court will therefore consider the debtors' current circumstances (current monthly income) and anticipated circumstances (whether their income is likely to increase during the course of the plan) in making its calculation of "projected disposable income." The Debtors' "projected disposable income" will be calculated based on the realities of the Debtors' circumstances as of confirmation and as reasonably anticipated to be during the length of the plan.

To properly do so, this Court will hold an evidentiary hearing on February 10, 2009 at 1:30 p.m.

**Signed on January 23, 2009**

                                          **/s/ Walter Shapero**
                                    **Walter Shapero**
                                    **United States Bankruptcy Judge**